**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARJAN SHARIFI, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:24-cv-171 |
| UNIVERSITY OF MARYLAND, BALTIMORE, | * | |
| Office of General Counsel 4716 Pontiac Street Suite 2117, Seneca Bldg College Park, MD 20742 | * * | |
| | * | |
| **Served on:** Office of the Attorney General Civil Litigation Division 200 St. Paul Place Baltimore, MD 21202 | * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

COMES NOW, Ms. Marjan Sharifi (the "Plaintiff" or "Ms. Sharifi"), by and through her undersigned counsel, brings this action against the University of Maryland, Baltimore (the "Defendant" or "UMB") for discrimination on the basis of national origin and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), disparate treatment, *see* 42 U.S.C. §2000e, *et seq.* Ms. Sharifi, recipient of a doctorate of dentistry from an international university, became a U.S. Citizen, and pursued a doctoral degree at UMB to facilitate her dentistry career in the U.S. In doing so, she experienced

national origin discrimination and retaliation at the hands of UMB and its agents, and in support states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §1343, and 28 U.S.C. §1331.

2. The Court has authority to grant equitable relief and monetary damages under 42 U.S.C. §2000e-5(g).

3. Venue is proper in this judicial district under 42 U.S.C. §2000e-5(f) and 28 U.S.C. §§1391(b) because the unlawful employment practice was committed in this district. The Defendant conducts business in this judicial district and the events giving rise to this cause of action occurred in this judicial district.

## PARTIES

4. The Plaintiff, Marjan Sharifi, is a female United States citizen of Iranian national origin, currently residing in the State of Pennsylvania, who was formerly employed by UMB as a research assistant in its Dental Biomedical Sciences ("DBMS") program laboratory.

5. Defendant is the University of Maryland, Baltimore, a public university in the University System of Maryland, located at 620 W. Lexington Street, Baltimore, MD 21201.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Ms. Sharifi timely filed a complaint of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on or about May 3, 2023.

7. The EEOC issued Ms. Sharifi a Notice of Right to Sue on October 20, 2023.

8. This action is being filed within the 90-day period after Ms. Sharifi received a Notice of Right to Sue from the EEOC.

## FACTUAL BACKGROUND

9. Ms. Sharifi enrolled as a doctoral ("PhD") student in UMB's DBMS program in August 2018. She was accepted into the program with graduation initially scheduled for the fall of 2022.

10. Prior to moving to the US and becoming a US citizen in 2017, Ms. Sharifi earned a Doctor of Dental Surgery degree in the country of her origin, Iran.

11. Ms. Sharifi was employed as a research assistant by UMB in the DBMS program laboratory from approximately July 2021 to February 2023.

12. At all times relevant to this Complaint, Ms. Sharifi was residing in the State of Maryland.

13. In August 2019, Ms. Sharifi joined the laboratory of Ms. Meenakshi Chellaiah ("Ms. Chellaiah") as a PhD student employed by the lab and supervised by Ms. Chellaiah.

14. Ms. Chellaiah was also Ms. Sharifi's "mentor" in the DBMS program and in this capacity exercised significant control over Ms. Sharifi's ability to progress through the program to graduation.

15. Ms. Chellaiah is a woman Indian national origin.

16. To the best of Ms. Sharifi's knowledge, with the exception of Ms. Sharifi and her sister,[1] every student in the DBMS program and laboratory was Saudi Arabian.

17. To the best of Ms. Sharifi's knowledge, she believes that at times relevant to the complaint, the graduation rate in the DBMS program for Saudi Arabian students was 100%, and for non-Saudi Arabian students, the graduation rate was 0%.

18. In the fall of 2019, Ms. Sharifi completed all required coursework for approval of her doctoral research project. Ms. Chellaiah delayed approval until December of 2020.

19. In 2020, Ms. Chellaiah delayed Ms. Sharifi taking her qualifying exam. She delayed scheduling Ms. Sharifi's first progress meeting — which was fundamental to Ms. Sharifi's progress through the program; Ms. Sharifi had to reach out to DBMS administrative staff to intervene and have the meeting scheduled. To the best of Ms. Sharifi's knowledge, students of Saudi Arabian origin under Ms. Chellaiah's supervision did not experience delays in progress and graduation.

---

[1] Ms. Sharifi's sister was also enrolled in UMB's DBMS program and experienced a similar pattern of discrimination and retaliation, which eventually forced her to resign from the program.

20. On information and belief, Ms. Sharifi is the only non-Saudi Arabian who Ms. Chellaiah has ever supervised or mentored in the DBMS program.

21. When Ms. Sharifi began in Ms. Chellaiah's lab, the other two DBMS students working in the lab were Mohammed Al Qranei and Hanan Aljohani, both of Saudi Arabian origin.

22. Ms. Sharifi experienced a series of discriminatory actions and statements by Ms. Chellaiah and other employees over the course of her employment in the DBMS laboratory.

    a. Ms. Chellaiah yelled at and berated Ms. Sharifi, including with comments referencing Ms. Sharifi's Iranian national origin in a negative manner.

    b. When Ms. Sharifi's sister withdrew from the program, Ms. Chellaiah made critical and denigrating comments about Ms. Sharifi's cultural background and family, including that "[t]his shows your poor family background, your poor culture. Your sister does not look like a real doctor. The only thing she knows is making a baby."

    c. Ms. Chellaiah denied Ms. Sharifi opportunities for training and instruction that were given to Saudi Arabian research assistants, including the opportunities to have her articles and thesis reviewed by faculty.

    d. Mr. Al Qranei, a Saudi Arabian colleague of Ms. Sharifi's, was allowed to graduate at a time of his choice; he remained in the DBMS program

for an additional year beyond the usual three-year program and was allowed to graduate *without* meeting the program's stated graduation criteria.

e. Ms. Chellaiah regularly humiliated and singled-out Ms. Sharifi in lab meetings among her coworkers, while failing to provide feedback to Ms. Sharifi for her supposed mistakes.

   i. After her first journal presentation within the lab, Ms. Challaiah said, "What kind of article is this, this article belongs in the trash, you wasted 30 minutes of my time." Ms. Sharifi sought clarification about Ms. Chellaiah's problem with the article but was told to re-read the article and understand for herself.

   ii. After Ms. Sharifi presented research data to Ms. Chellaiah, Ms. Chellaiah called the data "unacceptable." During a meeting, Ms. Chellaiah raised her voice at Ms. Sharifi and her sister, who also worked in the lab, continuing to call the data "unacceptable." Again, Ms. Chellaiah failed to provide an explanation for why the data was 'unacceptable' or any other substantive feedback.

   iii. After Ms. Sharifi requested an initial meeting of a research project committee, Ms. Chellaiah yelled at Ms. Sharifi, saying that she was, "the worst student I ever had, you and your sister… your family… I never had any problems with anyone,

       just you and your sister." Ms. Chellaiah then agreed to have the meeting stating, "You want it, I assure you, I will show you," then threatening that she would have Dr. Joseph Stains, a committee member, attend the meeting, stating that: "He will insult you and I will be there to see that you're disappointed and then you will understand where you are …you will understand what you should tell me or not … you will then understand how to obey your mentor."

   iv. In November 2022, a second committee progress meeting took place in which the research project committee members, including Dr. Joseph Stains, Dr. Rania Younis, Dr. Masahiro Iwamoto, and Dr. Renty Franklin berated and humiliated Ms. Sharifi, as previously threatened by Ms. Chellaiah.

f. Ms. Chellaiah and other professors and administrators in the DBMS program further discriminated against Ms. Sharifi by denying her the opportunity to visit the laboratory and choose her own mentor or supervisor, which was granted to students of Saudi Arabian origin.

g. When Ms. Sharifi applied to the pediatric residency program at UMB, she was told by her interviewer, Dr. Vineet Dhar, that she should "go back to her country" and that she had no chance of being accepted.

    h. During her time at DBMS, Ms. Sharifi learned from Saudi Arabian colleagues that they were not required to take or pass certain exams, which Ms. Sharifi *was* required to take.

    i. In lab meetings, there were multiple instances when all the student employees other than Ms. Sharifi started to speak in Arabic, which Ms. Sharifi does not speak. When she asked them what they were talking about in English so that she could participate, she was either ignored or told that "[i]f you want to communicate with us you have to learn Arabic."

    j. Ms. Chellaiah employed a 'priority list' of people she was able to assist with articles. To her knowledge, Mr. Aljohani was the first DBMS student on this list, followed by Mr. Qranei next; Ms. Sharifi and her sister were listed in places five and six on this list. In denying progress meetings with Ms. Sharifi, Ms. Chellaiah would cite this list as a reason to deprioritize Ms. Sharifi's (and her sister's) projects.

23. Ms. Sharifi first reported the discrimination she was experiencing to a superior in May 2021, when she reported it to a research faculty member; Dr. Tao Ma.

24. Ms. Sharifi also reported to her publication review committee members in or around April 2022 that Ms. Chellaiah was blocking her from submitting her publications for evaluation, and thus preventing her from graduating, for discriminatory reasons.

25. After these reports, Ms. Chellaiah and others in the DBMS laboratory began taking further negative actions against Ms. Sharifi in retaliation for her reporting the discrimination she was facing.

26. Ms. Sharifi had applied for and was likely going to be awarded a five-year, $500,000 grant that would have provided her with funds for her education and jumpstarted a research career.

27. On or around June 2nd, 2021, Ms. Chellaiah contacted the person responsible for submitting this grant and asked her to cancel Ms. Sharifi's grant application, informing them that Ms. Sharifi "was not ready." She did not inform Ms. Sharifi of this call.

28. Ms. Sharifi also reported this discrimination and retaliation to UMB's Human Resources Department ("UMB HR") in January 2022.

29. In or around April 2022, Ms. Sharifi again reported the discrimination she was experiencing to a number of her superiors and administrators at UMB, including: the then-outgoing DBMS program director Dr. Pei Feng; the new DBMS program director Dr. Abrham Schneider; her program coordinator Ms. Nicole Mitchell; and the UMB dental school head of research and grants Man-Kyu Chung.

30. In November 2022, Ms. Sharifi submitted a research paper for publication to Ms. Chellaiah. The paper had gone through several drafts in March and June/July of 2022. While Ms. Chellaiah accepted the paper in November 2022, she never let Ms. Sharifi publish it.

31. Ms. Sharifi again reported the discrimination she was experiencing to the UMB Ombudsperson, Mr. Brian Godette, in January 2023 but nothing was done to remedy the situation.

32. Ms. Sharifi also reported the discrimination she was experiencing to the Academic Affairs Department of the UMB Dental School in January 2023, specifically to Dr. Patricia Meehan and Dr. Kate Noonan, but again nothing was done to remedy the situation.

33. In or around January 2023, Ms. Sharifi again reported the discrimination she was experiencing during her employment to UMB HR, making a formal complaint with their Office of Accountability and Compliance ("OAC") alleging national origin discrimination by Ms. Chellaiah.

34. Ms. Sharifi was subsequently interviewed by UMB HR in March 2023.

35. Ms. Chellaiah then repeatedly denied Ms. Sharifi's requests to proceed with her publications, preventing Ms. Sharifi from graduating from the program.

36. In July 2023, Ms. Sharifi received draft findings from UMB HR's investigation, which significantly misrepresented the events Ms. Sharifi had reported and the subsequent evidence and testimony she provided, including through fabricated and misleadingly edited quotes.

37. These draft findings included a false allegation that Ms. Sharifi had stolen a notebook from the laboratory.

38. The discrimination and retaliation that Ms. Sharifi was experiencing became so pervasive, severe, and intolerable that she could no longer continue in her position as a research assistant with UMB.

39. Because of the discrimination she was experiencing, Ms. Sharifi was forced to resign from her position as a research assistant with UMB on or about February 2023.

40. Ms. Sharifi was subsequently forced to seek new employment with lower salaries than she earned in her research assistant position at UMB and with a significantly lower possibility of future earnings.

41. In September 2023, while Ms. Sharifi was still attempting to graduate, UMB cut off Ms. Sharifi's access to her university email without providing any notice or reason.

42. As of the filing of this complaint, Ms. Sharifi avers that she has completed all requirements for graduation from UMB's doctoral program; yet, she has not received the degree. Further, UMB is non-responsive to her requests for either the degree itself or any status updates on her degree – or even her enrollment — status.

43. As of this filing, Ms. Sharifi is employed in the dental field. However, her salary in her current position would pay significantly more annually if she had received her PhD from UMB.

## COUNT I DISCRIMINATION BASED ON NATIONAL ORIGIN

44. Plaintiff re-alleges and incorporates by reference the previous averments, and the paragraphs, infra, into this count as though fully set forth herein and further alleges that Defendant discriminated against Ms. Sharifi on the basis of her Iranian national origin.

45. Ms. Sharifi is a member of a protected class under Title VII based on her Iranian national origin.

46. At all relevant times, Ms. Sharifi performed the duties of her job at a satisfactory level or higher.

47. Defendant discriminated against the Plaintiff when they subjected her to adverse employment action such that she was denied a placement in pediatric residency program at UMB and was told by her interviewer that she should "go back to her country" and that she had no chance of being accepted.

48. Defendant discriminated against the Plaintiff when she was excluded from work conversations with colleagues because she did not speak Arabic.

49. Defendant discriminated against the Plaintiff when they subjected her to adverse employment action such that her direct supervisor placed her and another Iranian colleague at the bottom of a priority list for article review, while placing Saudi Arabian colleagues at the top of the list.

50. Defendant discriminated against the Plaintiff when they subjected her to adverse employment action when she was refused a job in the pediatric

program, when UMB HR and management failed to investigate or address Ms. Sharifi's national origin discrimination complaints until January 2023, when she was experienced worse treatment in the lab compared to non-Iranian colleagues, and when she was forced to resign under duress (i.e. constructive discharge).

51. Ms. Sharifi's treatment differed significantly from that of two (2) similarly-situated non-Iranian employees within the same lab.

52. Any reasons that the Defendant may raise to explain the adverse actions taken against Ms. Sharifi are pretextual and baseless. Ms. Sharifi experienced these adverse actions because of her national origin.

53. Plaintiff has suffered hardship and damages and has continued to incur attorney's fees and costs for her EEOC claim and the instant action.

## COUNT II DISCRIMINATION BASED ON RETALIATION

54. Plaintiff re-alleges and incorporates by reference the previous averments, and the paragraphs, infra, into this count as though fully set forth herein and further alleges that Defendant retaliated against her following Plaintiff's protected activity.

55. Ms. Sharifi first engaged in protected activity under Title VII when she raised concerns with her superiors in 2021 about her treatment in comparison to colleagues of a different national origin. She continued to engage in protected activity when she reported the national origin

discrimination she was experiencing to a series of superiors and administrators, including eventually filing formal complaints through UMB HR and OAC.

56. Defendant discriminated against the Plaintiff when they subjected her to adverse actions following her protected activity, including the following:

    a. Ms. Chellaiah actively sought cancellation of Ms. Sharifi's grant award.

    b. Ms. Chellaiah refused to publish Ms. Sharifi's research papers, preventing Ms. Sharifi from advancing in the program and delaying her graduation.

    c. Blocking Ms. Sharifi's graduation from the program via a series of delays and mistreatment.

    d. In the HR investigation, which only proceeded to an investigatory stage *after* Ms. Sharifi resigned under duress, false information and false accusations of theft were made against Ms. Sharifi in the HR investigation.

    e. Given the severity of the retaliation she faced and complete lack of action by UMB official to resolve the problem, she felt forced to resign from her role, inhibiting her career trajectory and earning potential.

    f. Ms. Sharifi was removed from the program following her complaints, and her university email was suspended with no notice.

    g. Ms. Sharifi has effectively been left in 'limbo' with regard to her degree status, despite completing degree requirements.

    h. As such, she has been denied a degree which she earned.

57. A causal link exists between Ms. Sharifi's protected activity and the adverse employment action because of the close temporal relationship between her HR reports and subsequent negative actions. Additionally, there is a causal nexus between the complaints of discrimination and the subsequent negative actions, which amounted to further discrimination of the same kind.

    a. Ms. Sharifi first reported discrimination in May 2021. On or around June 2nd, 2021, Ms. Chellaiah sought cancellation of Ms. Sharifi's application for a $500,000 research grant.

    b. Ms. Sharifi made continuous complaints about national origin discrimination to UMB leadership throughout 2021, 2022, and early 2023. She suffered the adverse actions listed in this complaint after making these complaints.

    c. Ultimately, after the HR investigation was concluded, Ms. Sharifi was removed from her university email and was prevented from continuing her degree. She has been left with no information or pathway to receive the degree, which she should have earned.

58. Any reasons that the Defendant may raise to explain the adverse actions taken against Ms. Sharifi are pretextual and baseless. Ms. Sharifi

experienced these adverse actions because she engaged in the protected activity of reporting discrimination to UMB management and HR.

### COUNT III DISPARATE TREATMENT

59. Plaintiff re-alleges and incorporates by reference the previous averments, and the paragraphs, infra, into this count as though fully set forth herein and further alleges that Defendant retaliated against her following Plaintiff's protected activity.

60. Ms. Sharifi is a member of a protected class under Title VII based on her Iranian national origin.

61. Ms. Sharifi was qualified for her position. She previously earned a doctorate-level dental degree abroad; she had significant knowledge and experience in dental practice and research that made her more than qualified to serve as a lab assistant.

62. Ms. Sharifi experienced adverse employment actions when she was not selected for a role within the pediatric residency program after being told by the interviewer that she should "go back to her country."

63. Ms. Sharifi experienced adverse employment actions when she was refused a job in the pediatric program, when UMB HR and management failed to investigate or address Ms. Sharifi's national origin discrimination complaints until January 2023, and when she was forced to resign under duress (i.e. constructive discharge).

64. Ms. Sharifi received disparate treatment as compared to her non-Iranian colleagues who, *inter alia*:

    a. Did not have their progress in the graduate program delayed by an intentional failure to schedule their meetings, examinations, and publication reviews;

    b. Were not denied opportunities for training and instruction;

    c. Were not denied financial aid;

    d. Were not subject to meetings with colleagues in a language they did not know;

    e. Were not held to program requirements for graduation and were, in fact, allowed to graduate at the time of their choosing;

    f. Were not insulted and humiliated in front of coworkers and faculty;

    g. Were not deprioritized for necessary meetings and evaluations; and

    h. Were not removed from consideration for research grants without their knowledge.

    i. Were not removed from their university emails while pursuing their degrees.

    j. Were not subject to non–response from UMB regarding the status of their degree for long periods of time.

    k. Were provided with their degrees after completing program requirements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

65. Grant a judgement in favor of the Plaintiff and declare that the Defendant has violated Title VII of the Civil Rights Act of 1964, *et seq.*, and its accompanying regulations.

66. Award compensatory and punitive damages to the Plaintiff for damages incurred as a result of the discrimination against her, as alleged in this Complaint, and pursuant to and within the statutory limitations of §102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

67. Order that the Defendant must:

    a. Provide Plaintiff with her duly earned PhD degree; and/or

    b. Any additional specific performance the Court believes would adequately make the Plaintiff whole.

68. Award Plaintiff all reasonable Attorney's Fees and costs associated with bringing this action.

Plaintiff prays for such additional relief as justice may require and this Court may find appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38 and §102 of the Civil Rights Act of 1991, 24 U.S.C. 1981a.


Dated: 1/18/2024                                Respectfully Submitted,

/s/ Katherine Patton
Katherine Patton, Fed. Bar No. 30693

/s/ Donald Quinn
Donald Quinn, Fed. Bar No. 22324

Quinn Patton, LC
846 Ritchie Highway, Suite 2A
Severna Park, Maryland 21146
(443) 247-5444
katpatton@quinnpatton.com
donquinn@quinnpatton.com

*Attorneys for the Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 18, 2024, a copy of the foregoing Complaint was mailed by USPS Registered Mail, Postage Pre-Paid to the:

Office of the Attorney General
Civil Litigation Division
200 St. Paul Place
Baltimore, MD 21202

*Designated as Service Contact for the*
*University of Maryland, Baltimore*

                                        /s/ Katherine Patton
                                        Katherine Patton