IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARJAN SHARIFI, | * |
| Plaintiff, | * |
| v. | *  Civ. No.: MJM-24-171 |
| UNIVERSITY OF MARYLAND, BALTIMORE, | * |
| Defendant. | * |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Marjan Sharifi ("Plaintiff") filed this civil action against defendant University of Maryland, Baltimore ("Defendant," or the "University"), alleging discrimination, retaliation, and disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). ECF 1. This matter is before the Court on Defendant's Motion to Dismiss, seeking dismissal of Plaintiff's Complaint for failure to exhaust her administrative remedies. The motion is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Defendant's motion.

I.  FACTUAL BACKGROUND

In August 2018, Plaintiff enrolled as a doctoral ("PhD") student in the University's Dental Biomedical Sciences ("DBMS") program. Compl. ¶ 9. Before enrolling at the University, Plaintiff received a doctorate in dental surgery in Iran, her country of origin. *Id.* ¶ 10. In August 2019, Plaintiff started working in the DBMS program laboratory as "a PhD student employed by the lab" under the supervision of Meenakshi Chellaiah ("Chellaiah"). *Id.* ¶ 13. Chellaiah is of Indian origin

1

and was Plaintiff's "mentor," exercising control over Plaintiff's ability to progress in the program. *Id.* ¶¶ 14–15. Plaintiff alleges that, to the best of her knowledge, all students in the program except her and her sister were of Saudi Arabian origin, and that Saudi students had a graduation rate of 100% while non-Saudi students had a graduation rate of 0%. *Id.* ¶¶ 16–17. Plaintiff also worked as a research assistant at the University in the DBMS program lab from about July 2021 to February 2023. *Id.* ¶ 11.

Plaintiff alleges that Chellaiah held up approval of her research project for over a year and delayed Plaintiff from taking a qualifying exam and having her first progress meeting, which was necessary for Plaintiff to complete the DBMS program. *Id.* ¶¶ 18–19. Chellaiah also yelled at Plaintiff on multiple occasions, insulted Plaintiff and her sister's cultural background,[1] denied Plaintiff training and instruction, kept her off lists to participate in article writing, and prevented her from graduating. *Id.* ¶¶ 20–24.

Plaintiff claims that other faculty members in addition to Chellaiah would berate and humiliate her. *Id.* ¶ 22.e.iv. Plaintiff's fellow student employees would purposefully exclude her from conversations by speaking Arabic, and when she asked what they were talking about, they told her she would "have to learn Arabic." *Id.* ¶ 22.i. Plaintiff also describes how during an interview for the University's pediatric residency program, the interviewer, Dr. Vineer Dhar, told her she should "go back to her own country" and that she had no chance of getting into the program. *Id.* ¶ 22.g. Plaintiff was not hired for a position in the program. *Id.* ¶ 50.

Plaintiff first reported the discrimination to a research faculty member in May 2021. *Id.* ¶ 23. She then informed the publication review committee that Chellaiah had been preventing her from submitting her publications, which she needed to do in order to graduate. *Id.* ¶ 24. On or

---

[1] Plaintiff also alleges that her sister resigned from the DBMS program after facing a "similar pattern of discrimination and retaliation." *Id.* ¶ 16 n.1.

around June 2, 2021, Chellaiah personally intervened to sabotage Plaintiff's chances of obtaining a $500,000 research grant. *Id.* ¶¶ 26–27.

In January 2022, Plaintiff reported Chellaiah's conduct to the University's Human Resources Department ("HR"), and again in April 2022, to a number of University administrators. *Id.* ¶¶ 28–29. Nonetheless, Plaintiff's situation remained the same. In November 2022, Chellaiah prevented her again from publishing a research paper. *Id.* ¶ 30. Plaintiff went on to report Chellaiah's discriminatory conduct three more times to University officials in January 2023, *id.* ¶¶ 31–33, and was interviewed by HR in March 2023, *id.* ¶ 34. In July 2023, Plaintiff received draft findings from HR's investigation, which "significantly misrepresented the events . . . and the subsequent evidence and testimony[,]" and alleged that Plaintiff had stolen a notebook from the DBMS laboratory. *Id.* ¶¶ 36–37. Chellaiah, meanwhile, continued to prevent Plaintiff from publishing research papers, keeping her from graduating. *Id.* ¶ 35.

In light of the "pervasive, severe, and intolerable" discrimination she faced, Plaintiff resigned from her position as a research assistant in or around February 2023. *Id.* ¶¶ 38–39. She continued her schoolwork, however, until September 2023, when the University cut off Plaintiff's access to her school email without notice or explanation. *Id.* ¶ 41. Though Plaintiff completed all graduation requirements, the University has ignored her requests for information regarding her degree or enrollment status, and she has been forced to take positions with lower salaries than had she been able to keep her research position and obtain her degree. *Id*. ¶¶ 40, 42–43.

II.     **PROCEDURAL BACKGROUND**

On or about May 3, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 6; *see also* ECF 6-4 ("EEOC Charge"). She received a Notice of Right to Sue on October 20, 2023. *Id.* ¶ 7.

On January 18, 2024, Plaintiff filed her Complaint against Defendant in this Court, claiming national origin discrimination, retaliation, and disparate treatment in violation of Title VII. ECF 1. Defendant filed a Motion to Dismiss on March 1, 2024, ECF 6, to which Plaintiff filed a Response in Opposition, ECF 7,[2] and Defendant filed a Reply in Support, ECF 10.

### III.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court may consider, at the motion to dismiss stage, documents "explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and "document[s]

---

[2] In her Response in Opposition, Plaintiff asks for the Court's leave to amend the Complaint to include discrimination in education claims under Title VI. ECF 7-1 at 11. The Local Rules of this Court require that such a request be made by a separate motion with a copy of the proposed amended pleading attached. *See* Local Rule 103.6(a). Plaintiff's request is denied for failure to comply with these requirements. *See Livingstone v. Walden Univ., LLC*, Civ. No. BAH-22-3096, 2023 WL 8806616, at *5 (D. Md. Dec. 20, 2023) (denying a request to amend embedded in an opposition to a motion to dismiss) (citations omitted).

submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as [they were] integral to the complaint and there is no dispute about [their] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (cleaned up). Courts may also take judicial notice of adjudicative facts under Rule 201 of the Federal Rules of Evidence,[3] *id.* (citation omitted), such as EEOC charges and decisions in employment discrimination cases, *see Taylor v. Go-Getters, Inc.*, Civ. No. ELH-20-3624, 2022 WL 1127902, at *7 (D. Md. Apr. 15, 2022) (citing *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).

## IV.     ANALYSIS

The EEOC has initial enforcement responsibility over Title VII claims. *See Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 406–07 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). Accordingly, an employee alleging a Title VII violation must first file a charge with the EEOC before attempting to bring suit in court. *Balas*, 711 F.3d at 406 (citing 42 U.S.C. § 2000e–5(e)(1)). "A[n EEOC] charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko*, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)). Once a charge is filed, the EEOC investigates the matter and provides notice to the employer. *Id.* (citing 42 U.S.C. § 2000e–5(b)).

Even after an employee has exhausted the administrative process and receives permission to sue, she is procedurally barred from bringing any Title VII claims that "exceed the scope of the

---

[3] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. Rules of Evid. 201(b).

5

EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . ." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022) (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). The allegations in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Chacko*, 429 F.3d at 509 (citation omitted). "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Id.* Courts must keep also in mind, however, that EEOC complaints are made "by those unschooled in the technicalities of formal pleading," and must construe them with the "utmost liberality." *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 440 (D. Md. 2012) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). "A federal court may hear a claim that was not presented to the EEOC so long as it is reasonably related to plaintiff's EEOC charge and can be expected to follow from a reasonable administrative investigation." *Faulkenberry*, 670 F. Supp. 3d at 252 (cleaned up); *see also Cowgill*, 41 F.4th at 384.

Plaintiff's EEOC Charge in the instant case alleges that Defendant engaged in discrimination based on national origin from January 12, 2023, through February 28, 2023. ECF 6-4. The narrative portion of the charge states:

> I. I was a PHD student and apart [sic] of the graduate program at the above-named employer. Beginning in approximately January 2023, I was subjected to harassment from Professor Meenah Chellaiah when I was bullied and blocked from graduation. In February 2023, I complained to the compliance officer and nothing was done to remedy the harassment.
>
> II. No reason has been given for the employer's failure to take corrective action.

> III. I believe I have been discriminated against because of my national origin (Iran) in violation of Title VII of the Civil Rights Act of 1964, as amended with respect to harassment and blocked from graduation.

*Id.*

Plaintiff's EEOC Charge falls short of the "broader pattern of misconduct" alleged in this action to have occurred over the course of multiple years. *Chacko*, 429 F.3d at 509. First, unlike the instant Complaint, there is no allegation in the EEOC Charge that Chellaiah or anyone else at the University retaliated against Plaintiff for her complaints of discrimination. *See* Compl. ¶ 56. The retaliation claim asserted in the Complaint is not reasonably related to Plaintiff's EEOC charge, and it would not have reasonably been expected to follow from an investigation of the charge. Accordingly, the Court finds that Plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim, and the claim must be dismissed. *See Cowgill*, 41 F.4th at 384 (affirming dismissal of retaliation claim where plaintiff "did not check the retaliation box on her charge form, . . . the narrative explaining her charge made no mention of retaliation[,]" and actions described in the charge "[did] not necessarily imply that [defendant] was motivated by a retaliatory impulse"); *Miles*, 429 F.3d at 491–92 (4th Cir. 2005) (affirming summary judgment on retaliation claim where plaintiff "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation").

Second, the discrimination claims made in the Complaint substantially exceed the scope of the allegations in the EEOC Charge, even construing those allegations with "utmost liberality." *Alvarado*, 848 F.2d at 460. Specifically, unlike the instant Complaint, the EEOC Charge does not allege discrimination based on Defendant's decision not to hire Plaintiff into the pediatric residency program. *See* Compl. ¶ 50. It does not mention this employment opportunity at all and makes no reference to Plaintiff's interview with Dhar nor the discriminatory statement he allegedly

7

made during this interview. *See id.* ¶ 22.g. A reasonable investigation of Plaintiff's EEOC Charge could not have been expected to look into the discriminatory conduct of anyone other than Chellaiah, the only person identified in the charge—much less conduct of other persons that occurred outside of the January and February 2023 time frame listed on the charge. *See Chacko*, 429 F.3d at 509 ("[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges [in a complaint] a broader pattern of misconduct.") (citing *Dennis*, 55 F.3d at 153, 156–57); *Kersting v. Wal–Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.").

The EEOC Charge also omits any allegation or indication that Plaintiff was constructively discharged from her position as research assistant. It does not even mention this position, nor Plaintiff's resignation from it, whether "under duress" or otherwise. Compl. ¶¶ 50, 56. Although the Complaint in this case may support a reasonable inference that the conduct described in the EEOC Charge is related to Plaintiff's constructive discharge, the EEOC Charge cannot be reasonably construed to encompass her constructive discharge claim without at least noting her position and resignation. *See Balas*, 711 F.3d at 408 ("[Courts] are not at liberty to read into administrative charges allegations they do not contain."); *Chacko*, 429 F.3d at 509 (holding that a claim submitted in litigation is procedurally barred "if the factual foundation in the administrative charge is too vague to support [the] claim"). Without mention of Plaintiff's position or resignation, a reasonable investigation of the EEOC Charge could not be expected to have examined the circumstances of Plaintiff's employment that amounted to a constructive discharge.[4] At best, the

---

[4] It is notable that, according to EEOC records regarding Plaintiff's charge, the agency completed its investigation on October 20, 2023, on the basis of "No Employer Relationship," ECF 6-5 at 3, suggesting that the charge failed to make the agency aware that Plaintiff was an actual employee of Defendant.

EEOC Charge alleges discriminatory harassment—not discriminatory constructive discharge. *See id.* ("A claim will . . . typically be barred if the administrative charge alleges one type of discrimination . . . and the claim encompasses another type . . . .").

In sum, Plaintiff's EEOC Charge was insufficient to provide notice of the employment discrimination and retaliation claims that would be brought in the instant litigation. The Complaint here substantially exceeds the scope of the charge and a reasonable investigation based on it. Accordingly, the Court finds that Plaintiff failed to exhaust her administrative remedies, and her Title VII claims are therefore dismissed.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss shall be granted, and the Complaint shall be dismissed without prejudice.

A separate Order will follow.

June 21, 2024
Date

Matthew J. Maddox
United States District Judge